UNITED STATES DISTRICT COURT

FOR THE

DISTRICT OF MASSACHUSETTS

JOSEPH PETER SCHMITT, pro se, )
      Plaintiff, )
       )
       )
vs. ) C.A. No. 2004-10717-RWZ
       )
PATRICK MULVEY, et al., )
      Defendants. )

OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR FOR SUMMARY JUDGMENT

1. **Introduction**

Contrary to the assertions of the defendants, the instant complaint dated March 25,2004 does not involve any disciplinary matter from December 2001 [this disciplinary matter is identified as disciplinary report No. MCI-CJ 2001-1583 and was authored by IPS Officer Carter Thomas.]. The instant complaint dated March 25,2004 does in fact revolve strictly around disciplinary report No. MCI-CJ 2002-0344 dated February 21,2002 and authored by defendant Patrick Mulvey.

Further, the Plaintiff has not, and does not, seek to be allowed to send or receive material of a sexual nature from the institution he is presently being detained.

It should also be noted that Plaintiff has indicated as a defendant former Commissioner of Corrections Michael T. Maloney, but service was refused by the department of correction and Plaintiff was refused the known address of said defendant by the Department of Corrections and his motions to obtain the address to conduct service was denied by this court which Plaintiff believes violates his Due Process, but is forced to accept the fact that he can not fight and win

such an issue with the court and defendants' counsel so determined to deprive him of his right to sue an individual whether they be a corrections official or ordinary citizen.

## II. Statement Of Undisputed Facts

The incidents complained of in the Plaintiff's original complaint occured while he was serving a 4 to 8 year prison sentence at MCI-Cedar Junction. Those incidents consisted of the illegal opening of his outgoing mail and the issuance of disciplinary report No. 2002-0344 based on the material contained therein.

The defendant Patrick Mulvey authored the disciplinary report alleging that the outgoing letter contained a "pornographic story involving children" and "Inmate Schmitt has been warned that this type of behavior will not be allowed, therefore by attempting to continue to mail these stories, he was in violation of the rules and regulations of this institution."

Defendant failed to state the exact rules and regulations allegedly violated by the Plaintiff. The only CMR that could be involved in this matter is 103-CMR-481 INMATE MAIL. Specifically 103-CMR481.06 and 103-CMR-481.14.

103-CMR-481.06 defines "sexually explicit material" as:

> a pictorial depiction of actual or simulated sexual acts including sexual intercourse, anal or oral sex, or masturbation or material which promotes itself based upon such depictions on a routine or regular basis or in individual one-time issues.

The material which is the basis of this complaint in no way meets the defination contained within the regulations and, therefore, the Plaintiff had no foreknowledge that his actions were prohibited. Further, the behavior that is prohibited relative to the sending of sexually explicit material is contained in 103-CMR-481.14. There, the regulation only prohibits the sending of:

> Threatening or harassing correspondence, including the sending os sexually explicit material to unwilling recipiants.

The disciplinary report fails to allege that the addressee was being harassed, threatened or was in any way unwilling to receive the material. So even if the material in question met the defination of "sexually explicit", the policy only prohibits the sending of that material to persons who are unwilling to receive it. The defendants failed to allege that the Plaintiff had either violated any portion of the regulations in sending thematerial, but simply relied on their own view of the material in question.

As stated above, the Plaintiff has not, nor does he, claim that he has any rights to send or recieve written material of a sexual nature while confined at the Nemansket Correctional Center (commonly called the Massachusetts TReatment Center). Therefore, the defendants attempts to mislead this court will not be supported by his response,

As stated above the instant complaint is based on disciplinary report No. MCI-CJ 2002-0344. Therefore, the defendants attempts to mislead the court by including issues related to disciplinary report No. MCI-CJ 2001-1583 will not be supported by his response.

As stated above the instant complaint involves incidents which occured at MCI-Cedar JUnction. Therefore, the defendants attempts to mislead the court including affidavits from Robert Murphy and John Luongo will not be supported by his response.

Defendants repeatedly allege that Plaintiff received financial gain from sexually explicit stories pertaining to sexual acts with a child. Nowhere in any Department of Corrections records is there any proof to back up this allegation. On the contrary, there is evidence supporting my repeated allegations that I only received financial gain by authoring adult homosexual stories for AJA Publishing Corp/Sportomatic LTD.

Defendants alleged that PLaintiff admitted to the disciplinary office that

he received payment for stories involving sexually activities with children. A review of the official disciplinary records fail to show this allegation, which is yet another attempt to mislead this court by the defendants.

III. <u>Argument</u>

A. <u>The Rules and Regulations Prohibiting Schmitt from Possessing or Mailing Sexually Explicit Material Involving Children at MCI-Cedar Junction and Receiving Money for the Material Did Not Violate His First Amendment Rights.</u>

The defendants attempt to mislead this court by claiming that this entire matter revolves around the alleged authoring of sexual stories which involve minor children. This is not the question. Plaintiff simply used these writings as a way of relaying incidents and emotions from his abusive childhood and as a means of gathering information for which he intended to obtain help for abused male children victims. This fact can be verified in various records and documents sent to and maintained by various officials of the Commonwealth.

The mere fact that some officials within the Department of Correction had negative feelings about the PLaintiff has no bearing on the question of whether or not those officials overstepped their authority. The motion of the defendants clearly attempt to prejudice this court by a continual referal to "sexually explicit material" involving children, "sexual acts with a child", and phrases of this nature. The question still remains basic and able to be determined by a review of the regulations that the Department of Correction imposes relative to the mail of inmates, and whether those regulations were violated by the defendants.

Because the regulations failed to prohibit the actions for which the Plaintiff received his disciplinary report and sanctions, any and all reference to them must be removed from his records.

Even assuming, arguendo, that the defendants have made a claim that the material in question is somehow "erotic literature" or "erotic novels", or could be defined as "obscenity" or "sexually explicit", there is nothing in the Department of Correction's own rules and regulations which would alert the Plaintiff that his actions were prohibited. The fact is, the Department of Correction's rules and regulations clearly state that "sexually explicit material" is "a pictorial depiction." Because the Plaintiff's letter did not contain any pictorial depictions, he could not have reasonably known that his actions were a violation of the existing rules and regulations of MCI-Cedar Junction.

Contrary to the defendants repeated referances to the allegedly criminal potential of the Plaintiff's writings Plaintiff refers this court to his original complaint **LEGAL ARGUEMENTS** paragraph number 1. This clearly indicates that such writings **has not been found to be intrinsically related to the sexual abuse of children**, and does retain the **FULL PROTECTION** under the **FIRST AMENDMENT**.

Nowhere in the defendants official records is there any factual proof that the Plaintiff ignored the prison rules prohibiting him from "giving money or any item of value to, or accepting money or any item of value from another inmate, a member of his family or his friend without authorization" and prohibiting "demanding or receiving money or anything of value in return for any reason." Plaintiff's financial records only indicate funds received from PUBLISHERS. A fact that has been known by the Department of Correction's IPS officials since Plaintiff was incarcerated at MCI-Gardner as far back as (approximately) 1996. It should be noted by the court that the defendants made no attempt to stop Plaintiff from writing and selling adult gay and bisexual and hetrosexual stories to publishers. The sudden concern only came after a shake down of the Department of Correction Disciplinary Detention Unit during late 2001. From this time forward officials of the Department of Correction went out of their way to

persecute the Plaintiff as clearly shown by the excessive disciplinary reports involving alleged threats against staff and their children. At no time prior to this does the Plaintiff's prison records show such disciplinary actions.

B.  **The Plaintiff Has Not Claimed That He Is Entitled To Author, Possess Or Mail "Sexually Explicit Material" While At The Treatment Center.**

The defendants attempt to insert the argument that the Plaintiff has claimed a First Amendment Right to the material in question while at the Treatment Center. This claim has not been raised in the instant action so, in an attempt to conserve judicial time and resources, he will only respond by stating that the regulations in question only prohibit "sexually explicit material" as is defined in the current regulations.

C.  **The Plaintiff Had An Existing Property Interest In The Material Confiscated From Him And Used As A Basis For The Disciplinary Proceedings.**

Because the Plaintiff had an existing property right to the material in question, the process used in his disciplinary hearing violated Due Process. **Sandin v. Connor, 515 U.S. 472 (1995)**. Also, the punishment imposed was clearly atypical because there was no notice that the Plaintiff's actions were prohibited.

Where a defendant, here a disciplinary officer, acts in a manner which is not according to the law or the rules and regulations, that action is arbitrary and violates Due Process. Had the actions of the Plaintiff been violative of some policy or regulation, the action of the disciplinary officer would not have imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." **Sandin, 515 U.S. at 484**. But because there was no policy or regulation which would have notified the Plaintiff that his actions were prohibited, the disciplinary hearing itself, and the punishment imposed, clearly is atypical.

This is especially so where this incident is a major factor in the Commonwealth's seeking to civilly commit the Plaintiff as a sexually dangerous person. A fact clearly evident in IPS Officer Carter Thomas' October 17,2001 **EXECUTIVE SUMMARY/101-19.** This in itself clearly puts this entire matter in the spot light as malicious intent against the PLaintiff by the numerous defendants at MCI-Cedar Junction.

The fact that the disciplinary officer continued the disciplinary hearing, and imposed such harsh sanctions, for an action which was not prohibited can only violate Due Process.

Defendants attempt to claim the sanctions are **"MEAGER"** and did not impose atypical and significant hardship in relation to the ordinary incidents of prison life. Defendants fail to inform this court of the fact that at the time of this disciplinary hearing/sanction Plaintiff was already serving sanctions which prevented him from having any of the available privileges for the foreseeable future, and that at the time of the alleged incident Plaintiff was housed in the Department of Correction Disciplinary Detention Unit where privileges consist of only the phone, radio and television. So, in reality, the Plaintiff was suffered with complete deprivation as he had no viable contact with the outside world. This fact prevailed for the remainder of the Plaintiff's prison term. Such deprivation, according to countless research studies, can and does have negative damage to a person's mental state. In this light defendants allegation of **"MEAGER"** sanctions is clearly understated and callous. A typical fact of Department of Correction officials when dealing with sex offenders, especially those who offend against a child as is the Plaintiff alleged criminal case(s).

Plaintiff has the right to expect prison official to follow its own rules and regulations. **PAYNE vs. BLOCK, 714 F2d 1510 (11th Cir. 1984).** It is clear

by a review of the defendants own exhibit(s), Exhibit A 103-CMR-481 Inmate Mail, that the defendants failed to follow the Department of Correction's rules and regulations regarding this incident.

D. **The Defendants Are Not Entitled To Qualified Immunity.**

The defendants attempt to classify themselves as "law enforcement officers." While it is true that correctional officers work in a prison setting with convicted criminals, that does not qualify as "law enforcement." In any event, correctional officers are public employees.

The question becomes whether a reasonable person would have known that their actions violated clearly established rights. This case involves the taking of the Plaintiff's United States Mail which he had duly sealed and placed in the institution's mail receptical. Any reasonable person would know that that piece of mail was protected by the laws and regulations of the United States Postal Service. Further, the Department of Correction's own policy provides that outgoing mail will only be opened and examined "where necessary to protect a legitamate governmental interest(s)", 103-CMR-481.14.

As stated above, the only prohibited outgoing mail (relative to this complaint), falls within 103-CMR-481.14(2)(d). That prohibition only applies to:

> threatening or harassing correspondence, including the sending of sexually explicit material to unwilling recipiants.

Because the defendants know, or are expected to know, the governing regulations of the institution where they are employed, they are not entitled to qualified immunity.

IV. **Conclusion.**

Because the defendants acted contrary to clearly written regulations, and because the regulations did not prohibit the Plaintiff's actions, this complaint should not be dismissed nor should summary judgment be granted.

(9)

Dated: April 4, 2005

                                            Respectfully submitted,

                                            Joseph Peter Schmitt, pro se
                                            30 Administration Road
                                            Bridgewater, Massachusetts
                                            02324-3230