UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 04-10717-RWZ

JOSEPH PETER SCHMITT

v.

PATRICK MULVEY, et al.

MEMORANDUM OF DECISION

December 6, 2005

ZOBEL, D.J.

      Plaintiff Joseph Peter Schmitt completed a sentence of incarceration at MCI-Cedar Junction in 2002 for conviction on two counts of rape of a child.  Instead of releasing plaintiff, the Commonwealth civilly committed him involuntarily to the Massachusetts Treatment Center (the "Treatment Center").  While serving his sentence at MCI-Cedar Junction, plaintiff received Disciplinary Report Number 02-0344 regarding his "attempting to mail out a pornographic story involving children."  (See Compl., Ex. A).  The report charged plaintiff with violating the following Department of Correction ("DOC") prison disciplinary rules:

    #1    disobeying an order, lying to, or insolence toward a staff member
    #2    violating any departmental rule or any other rule, regulation, or condition of an institution or community based program
    #8    conduct which disrupts or interferes with the security or orderly running of the institution.

(See id.; 103 Mass. Code Regs. 430.24(1), (2) and (8)).  Because plaintiff refused to attend the corresponding disciplinary hearing, the hearing officer drew an adverse

inference against plaintiff and deemed the reporting officer's account of events to be accurate. The hearing officer found plaintiff guilty of violating DOC prison disciplinary rules #1 and #2 and denied him ten weeks of television, phone and radio privileges. Plaintiff appealed, and the superintendent denied the appeal for lack of merit.

Plaintiff filed the instant suit claiming violations of his due process rights under DOC regulations, the Massachusetts Declaration of Rights (the "Declaration"), and the United States Constitution in Counts 1, 2 and 3, respectively. In Counts 4 through 9, he asserted violations of his rights to freedom of speech, freedom from sexual discrimination and freedom from cruel and unusual punishment, each under the Declaration and the Constitution. Lastly, Count 10 alleges the violation of 42 U.S.C. § 1983 ("§ 1983") and 18 U.S.C. § 242. Defendants DOC and various DOC employees now move to dismiss the Complaint or, in the alternative, for summary judgment on all counts.

Section 1983 authorizes plaintiff to seek relief for violation by a state actor of a federally-created right, including a constitutional right. See 42 U.S.C. § 1983. Although plaintiff pled the violation of § 1983 as a separate and final count in the Complaint, this statute actually forms the legal basis for plaintiff's allegations of federal constitutional violations in Counts 3, 5, 7 and 9. Accordingly, the court treats these counts as having been pled under § 1983 and now dismisses Count 10.

Plaintiff's due process claims in Counts 1, 2, and 3 challenge the adequacy of notice as provided under the DOC disciplinary procedural regulations set forth at 103 Mass. Code Regs. 430.000, et seq. These regulations define "sexually explicit" as

applying to "pictorial depictions," and they prohibit the mailing of sexually explicit material to unwilling recipients.  Plaintiff argues that the regulations did not provide him "prior notice or fair warning" that he could be sanctioned for writing explicit but non-pictorial stories and mailing such stories to willing recipients.  See 103 Mass. Code Regs. 481.06, 481.14.  He attacks the disciplinary code in its entirety for being ambiguous and therefore easily manipulated. (See Compl. ¶ 34, p.26).  Additionally, plaintiff asserts that the "generic response" provided as a basis for denying his appeal "is a blatant violation" of his constitutional and regulatory due process rights.  (See Compl. ¶ 36, pp.27-28).

Due process requires that the text of a statute or regulation must provide "fair and effective notice" of the conduct proscribed.  U.S. v. Cardiff, 344 U.S. 174, 177 (1952)(finding that constructive notice may not be inferred where the statute on its face did not provide "fair warning" of the conduct prohibited).  Defendants allude to the existence of a "rule prohibiting [plaintiff's] possession or mailing of sexually explicit material involving children while serving a sentence for rape of a child at a maximum security correctional institution" without ever once identifying the "rule" to which they refer.  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 7).  DOC regulations prohibit the mailing of sexually explicit material to unwilling recipients, but defendants identify no rule or regulation that addresses, much less prohibits, its possession.  While DOC regulations regarding civilly committed persons at the Treatment Center ban the possession of "unauthorized sexually explicit or offensive-related printed material or objects," the disciplinary rules for inmates in prison – which applied to plaintiff at the

3

time he received the discipline – contain no parallel provision.  103 Mass. Code Regs. 431.11(1)(C-13).

Even if such a regulation existed, defendants have offered no basis for its application to plaintiff's written material.  Defendants argue that "[t]he writing clearly is 'sexually explicit material' banned by the rules," but they ignore the fact that DOC regulations on their face limit "sexually explicit" material to "pictorial depictions."  (Defs.' Mem. of Law in Supp. of Mot. to Dismiss 8); 103 Mass. Code Regs. 481.06.  Although defendants claim that plaintiff's "attempt to draw some distinction or reject categorization of his own writing as . . . 'sexually explicit' is not material," they never clarify how the regulatory definition of "sexually explicit" provided fair warning that written depictions of such acts would also be subject to discipline.  Id.  Furthermore, as noted by the United States Supreme Court,

> [t]here are, of course, limits on the category of child pornography which, like obscenity, is unprotected by the First Amendment.  As with all legislation in this sensitive area, the conduct to be prohibited must be adequately defined by the applicable state law, as written or authoritatively construed.  Here the nature of the harm to be combated requires that the state offense be limited to works that *visually* depict sexual conduct by
> children below a specified age.

New York v. Ferber, 758 U.S. 747, 764 (1982).  Absent a straightforward explanation of the relationship between DOC regulations and plaintiff's writing, defendants' assertion rings hollow.

Defendants also argue that DOC regulations permit discretion in expanding the types of materials subject to disciplinary review and restrictions.  (See Defs.' Mem. of

4

Law in Supp. of Mot. to Dismiss 11).  The actual provision cited by defendants, that DOC "may exclude additional types of material that may interfere with the treatment and rehabilitation process at that institution," refers, however, only to incoming mail, not outgoing mail.  103 Mass. Code Regs. 481.15(3)(b).  The most similar provision regarding outgoing mail permits review and disapproval of such mail if it "contains information which may jeopardize institutional security, order, rehabilitation or the public safety," and with respect to sexual content, "threatening or harassing correspondence, including the sending of sexually explicit material to unwilling recipients."  103 Mass. Code Regs. 481.14(2)(d).  Nothing in the record identifies the intended recipients of plaintiff's mail as unwilling, threatened or harassed.  The restriction on outgoing mail also prohibits transmission of "contraband," defined as "any item(s) not approved for retention by an inmate at an institution."  103 Mass. Code Regs. 403.06.  The only support in the record for characterizing plaintiff's written material as contraband comes from a prior disciplinary report that sanctioned plaintiff for selling explicit stories.  (See Compl., Ex. B).  However, Report 02-0344, the one at issue, sanctioned plaintiff for simply having written such stories and contained no allegations of selling or otherwise obtaining money for them.

     Moreover, with respect to rehabilitation, defendants do little more than simply assert a connection between plaintiff's writing and his rehabilitation.  The majority of their argument focuses on prohibiting the writing for reasons of safety and security.  Defendants contend that "the rule is designed to prevent the harassment of female officers and treatment providers and to help preserve institutional security."  (Defs.'

Mem. of Law in Supp. of Mot. to Dismiss 7).  They also claim that "[p]rison officials rationally can view [plaintiff's] writing, involving sexual acts between children, as an added threat to institutional security and order."  (Id. at 8).  The Superintendent of the Massachusetts Treatment Center stated that permitting plaintiff's continued writing of explicit stories "poses a significant and immediate risk to the security and good order of the institution."  (Murphy Aff. ¶ 9).  He opined further "that if other inmates became aware of [plaintiff's] possession of sexually explicit material involving children that [plaintiff] may become the target of such inmates."  (Id.).  In sum, defendants' papers fail to persuade that their overriding concern in disciplining plaintiff concerns rehabilitation.

Defendants' focus on security and safety issues is even more curious in light of the fact that Report 02-0344 originally charged plaintiff with "conduct which disrupts or interferes with the security or orderly running of the institution," but then dismissed this charge as "not applicable."  (See Compl., Ex. A).  If plaintiff's conduct in fact constituted a reasonable threat to safety and security, defendants have failed to reconcile this position with the fact that DOC voluntarily dismissed this charge.

Without ruling on the merits of plaintiff's allegations, plaintiff has stated a claim for denial of due process for insufficient notice and, on the present record, summary judgment is inappropriate.  Accordingly, their motion for dismissal and/or summary judgment is denied as to Counts 1, 2 and 3.

Plaintiff's complaint regarding freedom of speech as asserted in Counts 4 and 5 regards the censoring of his outgoing mail to non-incarcerated recipients.  (See Compl.

6

¶¶ 10-11, 17-19, 24-28, 33, pp.19, 21-23, 26). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987). This claim overlaps with plaintiff's due process claims, in that both involve the issue of sexually explicit material and whether any DOC regulation in fact prohibited plaintiff's writing. Because, on the present record, the exact DOC regulation at issue remains unclear, dismissal or summary judgment at this time would be premature. Defendants' motion for dismissal and/or summary judgment is denied as to Counts 4 and 5.

Plaintiff characterizes himself as a victim of sexual discrimination, as stated in Counts 6 and 7, because defendants allegedly focused their disciplinary efforts on plaintiff's writing of homosexual experiences. (See Compl. ¶ 29, p.24). In essence, he asserts a violation of equal protection under the Constitution. However, plaintiff has not "claimed membership in a protected class or demonstrated that other [persons], similarly situated, were treated differently concerning [application of DOC disciplinary rules regarding sexually explicit material]." Centro Medico del Turabo, Inc. v. Feliciano de Melicio, 406 F.3d 1, 9 (1st Cir. 2005)(denying an equal protection claim by medical facilities against the Secretary of Health for the Commonwealth of Puerto Rico). Plaintiff's "inability to identify these doctrinal rudiments is fatal to [his] equal protection challenge." Id. Defendants' motion to dismiss is allowed as to Counts 6 and 7.

With respect to Counts 8 and 9, plaintiff asserts that deprivation of his telephone, radio and television privileges constituted cruel and unusual punishment. (See Pl.'s Oppos. to Defs.' Mot. to Dismiss 7). According to plaintiff, he "suffered with

complete deprivation as he had no viable contact with the outside world . . . [and] [s]uch deprivation, according to countless research studies, can and does have negative damage to a person's mental state." (Id.) A successful claim of cruel and unusual punishment under the Eighth Amendment must include two elements. Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999).

> First, the alleged deprivation of adequate conditions must be objectively serious, i.e., 'the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. . . . Second, the official involved must have had 'a sufficiently culpable state of mind,' described as 'deliberate indifference' to inmate health or safety. . . . This standard, requiring an actual, subjective appreciation of risk, has been likened to the standard for determining criminal recklessness.

Id. Because plaintiff's allegations lack both of these elements, defendants' motion to dismiss is allowed as to Counts 8 and 9.

Accordingly, defendant's motion to dismiss the Complaint (#28 on the docket) is allowed as to Counts 6, 7, 8, 9 and 10 and is denied as to the remaining Counts 1, 2, 3, 4 and 5.

_____    /s/ Rya W. Zobel
       DATE            RYA W. ZOBEL
                       UNITED STATES DISTRICT JUDGE