COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                                    SUPERIOR COURT
                                                                CIVIL ACTION
                                                                NO. 99-3683-D
                        JOSEPH P. SCHMITT                       99-4305    xx
                                                                99-4298    o
                             vs.

              DEPARTMENT OF CORRECTION & others[1]

### ORDER RELATIVE TO DEFENDANTS' MOTION TO VACATE PLAINTIFF'S INDIGENCY STATUS AND MOTION FOR SANCTIONS/ DISMISSAL

### INTRODUCTION

Plaintiff, Joseph P. Schmitt, is currently in the lawful custody of the Department of Correction ("DOC") at the Massachusetts Correctional Institution at Cedar Junction in Walpole, Massachusetts ("MCI-CJ"). Plaintiff, who appears pro se, has eight pending cases in Suffolk Superior Court. Six of those eight complaints name DOC as a defendant.[2] With respect to the above captioned complaint, plaintiff claims that defendants used excessive force when they restrained him (Count I), that defendants' actions constituted an assault upon plaintiff (Count II), and that defendants acted negligently (Count III).[3]

---

[1] Captain John Jones, Superintendent John Marshall, Jr., Lieutenant Wayne Belisle, Correction Officer James Cutting, Correction Officer Mark Gajawski, Correction Officer Bruce Tessiel, Correction Officer Kevin O'Hearn, Correction Officer Scott Raymondo, Registered Nurse John Auevill, in their individual and official capacities.

[2] The five cases, aside from the instant action involving DOC as well as other defendants, are as follows: (1) Civil Action No. 99-4369, (2) Civil Action No. 99-3680, (3) Civil Action No. 99-0546, (4) Civil Action No. 99-3630, (5) Civil Action No. 99-3687.

[3] Plaintiff's two remaining cases each involve a sole defendant. The first case, Civil Action No. 99-4305, is a negligence action against plaintiff's fellow inmate, David King, seeking $26 in damages for King's failure to return a set of earphones; the other case, Civil Action No. 99-4298, is a breach of contract action against Laufer Publishing Company seeking $12 in damages for the company's failure to refund the cost of two magazines after plaintiff canceled the prescription.

EXHIBIT E

Defendants in the above captioned action filed a motion to vacate plaintiff's indigency status on September 3, 1999, based on a review of plaintiff's institutional financial account that revealed that plaintiff was not indigent. Defendants filed a supplemental motion to vacate plaintiff's indigency status and for sanctions on September 22, 1999, because they believed that plaintiff deliberately secreted his income from the court. Defendants filed another motion for sanctions on September 27, 1999, claiming that plaintiff filed a forged affidavit in support of his indigency status with the court. For the following reasons, defendants' motion to vacate plaintiff's indigency status is **ALLOWED**. Furthermore, defendants' motions for sanctions are **ALLOWED** by dismissing with prejudice all of plaintiff's cases against DOC.[4] An evidentiary hearing on the motions was held on October 19, 1999.

## BACKGROUND

Plaintiff is currently incarcerated at MCI-Cedar Junction. On or about August 2, 1999, plaintiff filed a complaint commencing this action as well as a motion to waive filing fees on the basis of indigency. At that time, plaintiff's institutional personal account balance was $23.13 and his institutional saving account was approximately $57.99. The Superior Court allowed plaintiff's motion, and as a result, plaintiff did not have to pay a $185.00 filing fee.[5] A review by the defendants of the plaintiff's institutional financial accounts, however, revealed that plaintiff has more money than he originally disclosed to the court.

---

[4] Docket numbers 99-3683, 99-4369, 99-3680, 99-0546, 9-3630, 99-3687. Plaintiff moved to dismiss voluntarily five cases in a letter filed with the court on October 26, 1999. That motion is hereby denied in order to dismiss those cases with prejudice in accordance with the defendants' motions for sanctions.

[5] The filing fees in all of plaintiff's other cases were waived based on his claimed indigency.

2

Plaintiff's institutional financial accounts show that from July 30, 1998, to August 31, 1999, plaintiff received an income of $1,483.48 and expended a total of $1,476.72. A disbursement of $25.00 to the Haverhill Cooperative Bank is additional evidence that plaintiff has funds in an outside bank account. Also, while incarcerated, plaintiff subscribed to various magazines including National Geographic and Playgirl, indicating disposable income. As a result of these discoveries, defendants filed a motion to vacate plaintiff's indigency status on September 3.[6]

On September 9, 1999, defendants intercepted a letter from plaintiff to his sister, Charlotte Michaud ("Michaud"). This letter disclosed the fact that plaintiff had been writing and selling pornographic manuscripts to a publishing company. This letter also instructed Michaud on how to handle and deposit checks received from publishing companies, and, at the same time, it disclosed plaintiff's scheme to accumulate an income in an outside account without DOC's knowledge by directing the publishing companies to send his checks for his manuscripts to Michaud instead of to him.

In this letter to Michaud, plaintiff also discussed the fact that he had numerous pending cases in Suffolk Superior Court. While plaintiff admitted that his income for this year was $1,615.00, he also admitted that he had been hiding this income from the court in order to avoid paying the $185.00 filing fee. Plaintiff directed Michaud to call the Dime Bank and set up an

---

[6] Defendants filed this motion with respect to Civil Action No. 99-3683 and plaintiff filed his opposition on September 28, 1999. One week earlier, on August 27, 1999, defendants filed an identical motion for Civil Action No. 99-3687 for similar reasons, and plaintiff filed his opposition on September 7, 1999. Defendants filed the same motion again in conjunction with Civil Action No. 99-3630 and Civil Action No. 99-3680 on October 5 and October 19, 1999, respectively.

3

account in her name on his behalf because, in his own words, "I want to have at least $5,000 saved up before I'm free[7] as I intend to buy a van or bus and live in it when I get out as I'll have no other place to live." After reviewing this letter, defendants filed a supplemental motion to vacate plaintiff's indigency status and a motion for sanctions[8] on September 22, 1999, based on plaintiff's scheme to deliberately secrete his income from the court.

Thereafter, in support of his position, plaintiff filed an affidavit[9] purportedly signed by his mother, Carmella Schmitt ("Carmella") on September 27, 1999. Plaintiff warranted that this affidavit, the September 27, 1999 affidavit, was signed by Carmella. Upon receipt, defendants examined the September 27, 1999 affidavit and immediately filed another motion for sanctions[10] based on the fact that defendants believed that plaintiff had forged Carmella's signature. Plaintiff admits that he hand wrote the affidavit. He claims he sent it to Carmella in Connecticut and that she signed and returned it to him. This affidavit supports plaintiff's contention that he had a minimal income and that Carmella was his only source of revenue. The affidavit stated that Carmella sent only $10.00 to $20.00 a month to plaintiff. The signature on this affidavit, however, bears a remarkable resemblance to the plaintiff's handwriting.

Subsequently, on September 28, 1999, plaintiff filed a second affidavit, the September

---

[7] According to plaintiff's records, his anticipated date of release is August, 2002.

[8] This motion was filed with respect to Civil Action No. 99-3683.

[9] This affidavit was filed with respect to Civil Action No. 99-3687.

[10] This motion was filed with respect to Civil Action No. 99-3687. This motion was actually entitled Defendants' Motion to Strike the Affidavit of Carmella Schmitt. Included in this motion was defendants' statement to the court to sanction plaintiff if the court deemed it appropriate.

4

28, 1999 affidavit, also in opposition to defendants' motion to vacate plaintiff's indigency status.[11] Plaintiff stated in this affidavit that he is indigent and that he does not have an outside bank account in any state. In addition, on October 1, 1999, plaintiff filed an opposition to defendants' supplemental motion to vacate plaintiff's indigency status.[12] In this opposition, plaintiff stated that he knew that DOC was reading his mail and that, therefore, he intentionally lied in the letter to Michaud when he said that his income for the year was $1,615.00. The court does not find plaintiff's testimony credible concerning these facts.

Furthermore, when plaintiff commenced Civil Action No. 99-3630, plaintiff filed with the court a letter which he received from Carmella to support the merits of his case.[13] In this letter, Carmella mentioned that she was holding funds for plaintiff. Carmella informed plaintiff of his balance, but this balance has been blackened out. At the hearing on October 19, 1999, the court asked plaintiff the amount that was blackened out and why the amount was blackened out. Plaintiff testified that could not remember the amount or why he blackened it out.

Also, at this hearing, the court questioned plaintiff about the similarities between his signature and Carmella's signature on the September 27, 1999 affidavit. Plaintiff testified that the signature on the September 27, 1999 affidavit was Carmella's signature. Plaintiff volunteered to hire an ambulance to bring Carmella from Connecticut to the courthouse in

---

[11] This additional affidavit is actually entitled Plaintiff's Opposition to Defendants' Motion to Vacate Plaintiff's Indigency Status. It was filed in conjunction with Civil Action No. 99-3683.

[12] This motion was filed with respect to Civil Action No. 99-3683.

[13] Plaintiff filed this letter with the court on July 29, 1999 to support his suit against defendants.

Boston to confirm that she signed the affidavit. In response to this offer, the court scheduled a hearing on November 8, 1999, to allow Carmella to testify concerning the affidavit. At that point, the plaintiff immediately changed his mind and decided that his mother was too ill to come to Massachusetts. For this reason, the court canceled the November 8, 1999 hearing. The court did not find plaintiff's testimony at the hearing credible. The court finds that plaintiff intentionally misled the court as to his income and assets and that he wrote and signed Carmella's name to her purported affidavit in order to deceive the court concerning his indigency.

## DISCUSSION

I.  *Motion to vacate plaintiff's indigency status*

In order for the court to find a plaintiff indigent, the plaintiff must qualify as indigent according to the language of G.L. c. 261, § 27A. This statute has three separate provisions, (a) - (c), and each describes different circumstances under which a plaintiff may qualify as indigent. G.L. c. 261 § 27 A (a)-(c). When the plaintiff is a prisoner, however, the plaintiff may not attempt to qualify as indigent under (a) or (b) of § 27A, but must qualify as indigent according the language of provision (c) of § 27A. Langton v. Pepe, Civ. No. 97-J-874 (App. Ct. Dec. 1, 1997) (Armstrong, J., single justice). General Laws c. 261 § 27A (c) provides that:

> An indigent person is one who is unable to pay the fees and costs of the proceeding in which he is involved or is unable to do so without depriving himself or his dependents of the necessities of life, including food, shelter, and clothing.

The Appeals Court has held that a prisoner shall not be considered indigent if the court finds either that "that plaintiff inmate was solvent at the time of his filing or 'able to summon up cash from outside sources as he needs them.'" Moore v. Maloney, Civil No. 98-0019 (Suffolk Super. Ct. July 3, 1998) (Lauriat, J.), quoting Langton, supra.

6

In Langton, supra, the court vacated a plaintiff's indigency status even though, at the time the plaintiff filed his complaint, he had only fifty-four cents in his institutional personal account. The court held that because the plaintiff's institutional personal account showed deposits of $1,300 and that the plaintiff was spending $50 every month on canteen expenses, that plaintiff "had outside sources from which he could pay the entry fee - - or at least $125 of it . . . ." Langton, supra.

For the period of July 30, 1998, through August 31, 1999, plaintiff received an income of $1,483.48 and expended a total of $1,476.72. Although when plaintiff filed this complaint on August 2, 1999, his institutional personal account balance was only $23.13 and his institutional saving account was approximately $57.99, as stated above, plaintiff's total income for the year was $1,483.48. It is clear that plaintiff was utilizing his institutional personal account essentially as a checking account, maintaining a low balance in order to appear indigent.

In addition, plaintiff's letter to Michaud reveals plaintiff's business of writing and selling pornographic manuscripts which provided plaintiff with a steady income. Plaintiff failed to disclose this income to the court. In this letter, plaintiff admits that his income for this past year actually exceeded the amount cited in his institutional balance. Plaintiff admits to Michaud that he earned $1,615.00 and also directs Michaud to call the bank and set up an account in her name on his behalf because he wanted to have $5,000 saved up by the time he was released in the year 2002. Moreover, the letter that plaintiff submitted from Carmella with the blackened out balance, which plaintiff admittedly blackened out himself, confirms that plaintiff has access to a sum of money that he has not disclosed to the court. Therefore, both plaintiff's financial records and his mail reveal that he was "able to summons cash from an outside source as needed."

7

Langton, supra. Plaintiff receives an income from his pornographic writings and probably has at least $2,000 of his money held by his relatives.

Furthermore, imposing a filing fee on a plaintiff "will not result in any hardship above that faced by the average citizen considering whether to bring a lawsuit." Hampton v. Hobbs, 106 F.3d 1281, 1284-1285 (6th Cir. 1997) (rejecting constitutional challenges to federal filing requirements imposed on prisoners by the Prison Litigation Reform Act). It is undisputed that plaintiff is already provided the necessities of life by DOC. For example, he receives, without costs, his housing, meals, clothing, medical care, dental care. Under these circumstances, requiring plaintiff to pay a $185 filing fee does not impose an extraordinary hardship on him.

Also, the court, infra, finds that the signature on the September 27, 1999 affidavit purportedly signed by Carmella, which declares that plaintiff has a minimal income and that Carmella is plaintiff's only source of revenue, is forged, and therefore the court does not consider this affidavit in its evaluation of plaintiff's indigent status.

Accordingly, plaintiff is clearly able to pay the filing fee under the statutory standard without depriving himself of the necessities of life.

II.     *Motion for sanctions against plaintiff*

Defendants also filed a motion for sanctions against plaintiff on the grounds that plaintiff deliberately secreted his income from the court and filed a false affidavit of indigency. Defendants claim plaintiff's actions amount to a fraud on the court.

A plaintiff has committed a fraud on the court when it can be shown that he has "sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier . . . ."

8

Rockdale Management Co. v. Shawmut Bank, N.A. 418 Mass. 596, 598 (1994), quoting Aoude v. Mobil Oil Corp., 892 F.2d 1115, 1118 (1st Cir. 1989). In other words, a fraud on the court has occurred when a party has created and presented false evidence in support of a claim or defense. Rockdale, 418 Mass. at 599.

When a party attempts to demonstrate a fraud on the court, he must show more than just the presence of fraud. Rockdale, 418 Mass. at 600. That party must show that the wrongdoer's conduct formed a pattern or scheme to defraud. Id. at 600. Moreover, this pattern or scheme to defraud must be proven clearly and convincingly. Auode, 892 F.2d at 1118.

It is important to note that "a fraud on the court" is not an independent cause of action in Massachusetts. National Engineering Service v. Galello, 1995 WL 859241 (Mass. Super. Ct. May 9, 1995) (Lenk, J.). Therefore, in a situation where one party has defrauded the court and the other party is innocent, that innocent party may not bring a cause of action against the defrauding party. If one party suspects that "a fraud on the court" has occurred, however, that party is "free to move to dismiss the claims . . . or to seek other sanctions." National Engineering Service, supra. Ultimately, it is the court's decision whether or not to take punitive measures. Rockdale, 418 Mass. at 598.

Once the court finds that a party has committed a fraud on the court, the court has broad discretion to dispose of the matter. Rockdale, 418 Mass. at 598. "When a fraud on the court is shown through clear and convincing evidence to have been committed in an ongoing case, the trial judge has the inherent power to take action in response to the fraudulent conduct." Id. at 598. The judge may dismiss the claim or the entire action. Id. at 598, citing Aoude, 892 F.2d at 1118. The judge may also enter a default judgment if it is appropriate under the circumstances.

9

Rockdale, 418 Mass. at 598, citing Eppes v. Snowden, 656 F. Supp 1267, 1279 (E.D.Ky. 1986).

In Rockdale, supra, a party forged a document, proffered that document to the court, and testified under oath as to the authenticity of the document. This conduct formed a pattern of deception which constituted a fraud on the court. Rockdale, 418 Mass. at 599. Plaintiff here, like the defrauding party in Rockdale, supra, has clearly formed a pattern which defrauded the court.

The court finds that plaintiff did, in fact, forge Carmella's signature on the September 27, 1999 affidavit. Although in Rockdale, supra, the defrauding party admitted the forgery and plaintiff here has not, the court finds that based on a comparison of the alleged signature of Carmella on the September 27, 1999 affidavit with plaintiff's own handwriting exemplars, the signature on the September 27, 1999 affidavit was clearly written by plaintiff.

Specifically, the court examined the capital "S" in the name Schmitt of the signature on the September 27, 1999 affidavit with "S's" written by plaintiff in other documents. For example, the "S" on the September 27, 1999 affidavit strongly resembles the "S" in plaintiff's signature on a letter he filed with the court regarding consolidating his pending cases. Furthermore, a comparison of the number nine as written in the September 27, 1999 affidavit also bears a significant resemblance to the number nine as written by plaintiff when referring to Civil Action No. 99-4369 and Civil Action No. 99-3680 in a letter he filed with the court on October 26, 1999.[14] Also, the court takes into consideration the fact that plaintiff has most likely made an effort, since the execution of the September 27, 1999 affidavit, to change his handwriting, yet plaintiff's own signature generally, even after September 27, has continued to

---

[14] This letter is the letter in which plaintiff requested that the court dismiss five of his pending cases.

10

appear extremely similar to the alleged signature of Carmella. Moreover, with respect to the September 27, 1999 affidavit, when offered an opportunity, plaintiff declined to have Carmella appear in court and verify her own signature. Therefore, the court finds that plaintiff did forge Carmella's signature.

The court also finds that plaintiff has committed a fraud on the court as defined in Rockdale, supra. Rockdale, 418 Mass. at 598. The court bases this finding on seven deceptive acts committed by plaintiff. These acts are as follows: (1) the forgery itself, (2) plaintiff's proffering this forged affidavit to the court as authentic, (3) plaintiff's testimony under oath to the court that the signature on the affidavit was Carmella's signature, (4) the letter to Michaud, which reveals plaintiff's steady income from writing pornography for a publishing company which he kept in an outside bank account, (5) plaintiff's conspiring with Michaud to hide the existence of the bank account from the court,[15] (6) the letter with the blackened out balance that plaintiff admitted that he blackened out himself, which is clearly an act taken by plaintiff in an attempt to conceal his income from the court, (7) the September 28, 1999 affidavit filed by plaintiff in which plaintiff again misrepresented his financial situation to the court.[16] All of these events clearly and convincingly demonstrate plaintiff's pattern of deception constituting a fraud on the court. Rockdale, 418 Mass. at 598. As a result, mindful of the court's broad discretion in sanctioning a defrauding plaintiff, the court shall dismiss with prejudice plaintiff's cases in Civil

---

[15] This fact was also revealed in the letter to Michaud.

[16] As stated earlier, plaintiff stated under oath in this affidavit that he was indigent and that he did not have an outside bank account. Yet, it is clear to the court that plaintiff does have an income which would enable him to pay his filing fee and that he could very likely have an outside bank account for which he has not accounted.

11

Action No. 99-3683, 99-4369, 99-3680, 99-0546, 99-3630, and 99-3687. <u>Rockdale,</u> 418 Mass. at 598.

## ORDER

For the reasons stated above, the court hereby **ORDERS** that Defendants' Motion to Vacate Plaintiff's Indigency Status is **ALLOWED**.

The court **FURTHER ORDERS** that Defendants' Motion for Sanctions is **ALLOWED** as follows:

The court **ORDERS** that a judgment of dismissal with prejudice enter in Civil Action No. 99-3683, Civil Action No. 99-4369, Civil Action No. 99-3680, Civil Action No. 99-0546, Civil Action No. 99-3630, and Civil Action No. 99-3687.

The court **FURTHER ORDERS** that plaintiff's remaining cases, Civil Action No. 99-4305 and Civil Action No. 99-4298, will be dismissed without prejudice unless plaintiff pays the $185.00 filing fee for each case within twenty-one days.

_____
Patrick J. King
Justice of the Superior Court

DATED: November 29, 1999.

13

U.S. Department of Justice  
United States Marshals Service

**PROCESS RECEIPT AND RETURN**  
See Instructions for "Service of Process by the U.S. Marshal" on the reverse of this form.

| PLAINTIFF | COURT CASE NUMBER |
|---|---|
| Joseph Peter Schmitt | 04-10717-RWZ |
| **DEFENDANT** | **TYPE OF PROCESS** |
| Patrick Mulvey et al | Civil Rights Action |

**SERVE** NAME OF INDIVIDUAL, COMPANY, CORPORATION, ETC., TO SERVE OR DESCRIPTION OF PROPERTY TO SEIZE OR CONDEMN  
➤ Michael T. Maloney  
**AT** ADDRESS (Street or RFD, Apartment No., City, State and ZIP Code)  
50 Maple Street, St 3, Milford, MA 01757-3698

SEND NOTICE OF SERVICE COPY TO REQUESTER AT NAME AND ADDRESS BELOW:

Joseph P. Schmitt M-81137  
30 Administration Road  
Bridgewater, MA 02324-3230

| Number of process to be served with this Form - 285 | ONE |
|---|---|
| Number of parties to be served in this case | SEVEN |
| Check for service on U.S.A. | |

SPECIAL INSTRUCTIONS OR OTHER INFORMATION THAT WILL ASSIST IN EXPEDITING SERVICE (Include Business and Alternate Addresses, All Telephone Numbers, and Estimated Times Available For Service):

Service should be conducted 8 am - 4 pm

Signature of Attorney or other Originator requesting service on behalf of:  ☒ PLAINTIFF  ☐ DEFENDANT    TELEPHONE NUMBER    DATE 10-6-04

**SPACE BELOW FOR USE OF U.S. MARSHAL ONLY — DO NOT WRITE BELOW THIS LINE**

| I acknowledge receipt for the total number of process indicated. (Sign only first USM 285 if more than one USM 285 is submitted) | Total Process | District of Origin No. 38 | District to Serve No. 38 | Signature of Authorized USMS Deputy or Clerk | Date 10/14/04 |
|---|---|---|---|---|---|
| | 1 | | | | |

I hereby certify and return that I ☐ have personally served, ☐ have legal evidence of service, ☐ have executed as shown in "Remarks", the process described on the individual, company, corporation, etc., at the address shown above or on the individual, company, corporation, etc., shown at the address inserted below.

☒ I hereby certify and return that I am unable to locate the individual, company, corporation, etc., named above (See remarks below)

Name and title of individual served (if not shown above)

☐ A person of suitable age and discretion then residing in the defendant's usual place of abode.

Address (complete only if different than shown above)

| Date of Service | Time | |
|---|---|---|
| 10/15/04 | 1:15 | pm |

Signature of U.S. Marshal or Deputy

| Service Fee | Total Mileage Charges (including endeavors) | Forwarding Fee | Total Charges | Advance Deposits | Amount owed to U.S. Marshal or Amount of Refund |
|---|---|---|---|---|---|
| | | | | | |

REMARKS:  
(1) 10/15/04 - 1:15pm - Individual no longer works at above address; unknown where individual currently works.

PRIOR EDITIONS MAY BE USED           1. CLERK OF THE COURT           FORM USM

EXHIBIT F